# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
GOPALAKRISHNA PILLAI AJEESH
KUMAR KAMMARAYIL, *et al.*,

    Plaintiffs,

v.

STERLING OPERATIONS, INC., *et al.*,

    Defendants.

Civil Action No. 15-1699 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION AND ORDER

The two relators, Gopalakrishna Pillai Ajeesh Kumar Kammarayil and Mohammed Azad Shabbir, waited three years, from October 2015 to November 2018, for the government to decide whether to intervene in this *qui tam* matter brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(1). Despite the fact that the government's memoranda filed in support of the government's seven motions for extension of time to make the intervention decision ("the extension memoranda") were filed *ex parte* and not shown to the relators, the relators consented to each extension over the three-year period based, at least in part, on the government's representations to the relators that intervention was likely.[1] Now, confronted by the government's final decision declining to intervene in what seems to the relators to be a clear-cut case under the FCA, as already "established in a civil action tried in the United States District Court for the Eastern District of Tennessee," *see* Rels.' Mem. Supp. Order that the Dep't of Justice Serve on Relators' Counsel, Under Seal, the Mem. of Law That Accompanied the

---

[1] *See* Gov't's Motions for Extension of Time to Consider Election to Intervene, January 11, 2016, ECF No. 2; July 08, 2016, ECF No. 4; January 11, 2017, ECF No. 8; July 10, 2017, ECF No. 10; January 12, 2018, ECF No. 13; May 8, 2018, ECF No. 15; September 11, 2018, ECF No. 18.

1

Government's Seven Requests for Extensions to Consider Its Election to Intervene and Preserve Records ("Rels.' Mem.") at 1, ECF No. 24 (describing Judgment, *MAKS, Inc., et al. v. Sterling Operations, Inc., et al.*, 3:10-cv-00443-TAV-HBG (E.D. Tenn. Feb. 14, 2013), ECF No. 336 ("2013 Judgment")), the relators seek limited unsealing to them of the government's extension memoranda, to ascertain whether material discrepancies exist between the government's representations to the Court and to the relators in private over the three-year period, as well as to inform the relators about any weaknesses in their claims that may have been uncovered by the government about which they should be aware in deciding how or whether to pursue this litigation, *id.* at 10-11.

Notably, the relators do not request a full unsealing of the extension memoranda such that the memoranda would become available to the public. *See* Rels.' Mem. at 9 (noting that "the Court need not, yet, consider the merits of unsealing, for public view, the memoranda"). Instead, the relators seek a limited unsealing for the relators' (and their counsels') review only, requesting an order that the government serve the memoranda on relators' counsel, "under seal." Rels.' Mot. for Order that the Dep't of Justice Serve on Relators' Counsel, Under Seal, the Mem. of Law That Accompanied the Government's Seven Requests for Extensions to Consider Its Election to Intervene and Preserve Records ("Rels.' Mot.") at 1, ECF No. 24; Rels.' Reply Supp. Rels.' Mot. ("Rels.' Reply") at 1, ECF No. 27. The government, unhelpfully, mischaracterizes the relators' motion as seeking a complete "unsealing," Gov't's Mem. Opp'n Rels.' Mot. ("Gov't's Opp'n") at 2, ECF No. 26, without acknowledging the more limited request before the Court. For the reasons set forth below, the relators' motion for limited unsealing of the extension memoranda is granted.[2]

---

[2] The relators also request an order requiring that "those DOJ personnel who worked on or deliberated over" the instant case "take whatever precautionary measures are required to preserve all relevant documents," Rels.'

I.  BACKGROUND

The relators claim that Sterling Operations, Inc., in performing on a contract with the United States Army Corps of Engineers ("USACE") to supply "relocatable buildings ("RLBs") to house U.S. service men and women at the Bagram Air Field ("BAF") in Afghanistan," Rels.' Mem. at 2, conducted a "planned armed robbery," *id.* at 5, of its subcontractor, Kuwait-based MAKS Inc. General Trading and Contracting Co. ("MAKS"), on October 23, 2009.  According to the relators, who were employed by MAKS and eyewitnesses to the alleged armed robbery, Compl. ¶¶ 27-28, ECF No. 1, "at approximately 5:30 a.m., Sterling personnel armed with assault/automatic weapons invaded the MAKS construction compound in Kabul, Afghanistan," Rels.' Mem. at 6, "[k]eeping the MAKS employees at bay with their automatic weapons for some six hours" while "Sterling personnel stole 90 [RLB] modules from MAKS before the Afghan Ministry of Interior Police arrived and halted further thefts," *id.* at 6.  In a civil lawsuit brought by MAKS in the Eastern District of Tennessee, a jury found Sterling Operations liable to MAKS for breach of contract and for trespass.  *See* 2013 Judgment.  The relators, who, along with MAKS, were plaintiffs in the successful Eastern District of Tennessee case against the defendants, brought the instant FCA lawsuit in October 2015, claiming that, during the armed robbery, the defendants damaged the RLBs and subsequently made false claims to the U.S. Government for equitable adjustments to the contract price for damages caused by the defendants' own criminal acts.  Compl. ¶¶ 32-44.  According to the relators, "[h]ad the U.S. known of the falsity as to Sterling's fraudulent and criminal conduct with respect to MAKS, the

---

Mem. at 13, which request is denied.  Relators' request is tied to concerns about "possible political interference in DOJ's deliberative processes," Rels.' Mem. at 13, which the government rebuts as an "outlandish conspiracy theory," Gov't's Opp'n at 9.  The relators have not shown that a preservation order is necessary in this case since the government is "well-aware of" and "will act according to" its obligation to preserve records subject to relators' threatened litigation.  *Id.* at 11.  Moreover, the government has already "issued a preservation hold letter to the Army to preserve all material relevant to this *qui tam* matter."  *Id.* at 10.

3

government would not have made payments to Sterling." Compl. ¶ 137. This *qui tam* lawsuit seeks $9,000,000 in damages. Civil Cover Sheet at 2, ECF No. 1-1. Three years later, the government declined to intervene. *See* Gov't's Notice of Election to Decline Intervention, ECF No. 23.

## II. LEGAL STANDARD

"[T]he starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Johnson v. Greater Southeast Community Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). The strong presumption of public access to judicial records is a "longstanding common-law right" that "'antedates the Constitution.'" *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 674 (D.C. Cir. 2017) (quoting *U.S. v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997)). The right of access to court documents is also grounded in the First Amendment. *See El-Sayegh*, 131 F.3d at 160 ("The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents, 'if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct.'" (quoting *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991)).

In determining whether judicial records should be sealed or made publicly accessible, all Circuits apply a balancing test that is "analytically similar," *Metlife, Inc.*, 865 F.3d at 671, to the D.C. Circuit's balancing test articulated in *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980). The *Hubbard* test is intended to "ensure[] that [courts] fully account for the various public and private interests at stake." *Metlife, Inc.*, 865 F.3d at 666 (citing *Hardaway v. District of Columbia Housing Authority*, 843 F.3d 973, 980 (D.C. Cir. 2016); *Primas v. District of*

*Columbia*, 719 F.3d 693, 698-99 (D.C. Cir. 2013); *Nat'l Children's Ctr., Inc.*, 98 F.3d at 1409-11; *Johnson*, 951 F.2d at 1277 & n.14). To that end, the *Hubbard* test requires courts to consider six factors in particular: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *See Hubbard*, 650 F.2d at 314.

The *Hubbard* test is, however, inapplicable in at least two circumstances. First, the *Hubbard* test only applies to the sealing or unsealing of *judicial records*, and "'not all documents filed with courts are judicial records.'" *Metlife, Inc.*, 865 F.3d at 666 (quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013)). "Rather, 'whether something is a judicial record depends on the role it plays in the adjudicatory process.'" *Id.* (quoting *Am. Int'l Grp.*, 712 F.3d at 3). A document filed with a court (1) that "can affect a court's decisionmaking process," (2) "which the parties hope to influence the court," and (3) "upon which the court must base its decision" is a judicial record. *Metlife, Inc.*, 865 F.3d at 667. *See also Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders ("Leopold")*, 300 F. Supp. 3d 61, 92 (D.D.C. 2018). Thus, the *Hubbard* test is inapplicable where a court filing is nonetheless not a judicial record because of its "role" in the "adjudicatory process." *Metlife, Inc.*, 865 F.3d at 666.

Second, because the *Hubbard* test is probative of a right of access under the common law, the test "must yield to a statute 'when Congress has spoken directly to the issue at hand.'" *Metlife, Inc.*, 865 F.3d at 669 (quoting *Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 937 (D.C. Cir. 2003)). Therefore, if a statute (*e.g.*, the FCA) clearly dictates that a judicial filing should or should not be sealed, the *Hubbard* test is rendered "inapplicable." *Id.*

5

## III.     DISCUSSION

The government asserts essentially two arguments to maintain the *ex parte* seal on the seven extension memoranda. First, the government argues that the FCA "evinces the intent (and the requirement) that government applications for extensions of the seal and the time for making a decision to intervene should remain under seal." Gov't's Opp'n at 6. Second, even if the FCA does not mandate sealing of the extension memoranda, according to the government, unsealing the memoranda would "reveal investigatory techniques, decision-making processes, and reasoning" that would prejudice the government's ability to conduct effective investigations in the future and "have a chilling effect on the future preparation of such briefs," because, knowing that they could be eventually disclosed, the government will become more "circumspect" about "revealing to the courts the course of its investigations" in support of extension motions. *Id.* at 7- 8. The government's arguments are addressed *seriatum*, before turning to analysis of the *Hubbard* factors, which surprisingly no party addressed.

### A.     The FCA Does Not Require That Memoranda Supporting Government's Motions for Extension of Time Remain Under Seal

The FCA provides that a plaintiff may bring a civil action "in the name of the Government," 31 U.S.C. § 3730(b)(1), and prescribes that the plaintiff must, in addition to filing its complaint under seal and *in camera*, serve its complaint and material evidence on the government, thereby triggering a 60-day countdown during which time the "Government may elect to intervene and proceed with the action," *id.* § 3730(b)(2). After the 60-day period lapses, the complaint may be unsealed, *id.,* unless the government "for good cause shown" "move[s] the court for extensions of the time during which the complaint remains under seal," *id.* § 3730(b)(3). Any such government motion "may be supported by affidavits or other submissions in camera." *Id.* Absent from the FCA's carefully prescribed schedule for unsealing the

*complaint* is any indication as to whether government "submissions," if any, filed in support of the government's "good cause" requirement for extensions of time, should be unsealed along with the complaint, or remain sealed after the government decides whether to intervene.

Contrary to the government's assertion, the FCA therefore does not "evince[] the intent," much less "the requirement," that the memoranda remain under seal. Gov't's Opp'n at 6. The statute is simply silent on this issue, providing no indication that Congress intended to modify the default rule that "the decision as to access (to judicial records) is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Hubbard*, 650 F.2d at 316-17 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 589 (1978)).

Neither of the two cases relied upon by the government provides otherwise. *See* Gov't's Opp'n at 6 (citing *United States ex rel. Stephens v. Prabhu*, No. CV-S-92-653-LDG (LRL), 1994 WL 761236 (D. Nev. Dec. 9, 1994) and *United States ex rel. Couglin v. IBM*, 992 F. Supp. 137 (N.D.N.Y. 1998)). The *Prabhu* court merely acknowledges that the FCA does not "direct[] the court to unseal the motions for enlargement of time filed *in camera*," 1994 WL 761236 at *1, but in no way holds that such unsealing is *prohibited* by the FCA. Similarly, the government's reliance on *IBM* is particularly misplaced since that court *granted* the defendant's motion to unseal the relators' opposition to the proposed settlement agreement "[a]fter balancing the need for and harm risked by the disclosure sought," 992 F. Supp. at 141, even though such unsealing is not directly contemplated by the FCA. Moreover, in reaching its conclusion, the *IBM* court reviewed prior judicial opinions, concluding that they all "reasoned that because the False Claims Act permits *in camera* submissions, the statute necessarily gives the court discretionary authority over whether to maintain the secrecy of such submissions." *Id.* at 140 (citing *United*

*States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 902 F. Supp. 189, 190-192 (E.D. Mo. 1995), *United States v. CACI Int'l Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995), and *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994)). *See also United States ex rel. Lee v. Horizon West, Inc.*, No. C 00-2921 SBA, 2006 WL 305966 (N.D. Cal. Feb. 8, 2006) (ordering disclosure of the government's extension requests in FCA case). Thus, even the cases relied upon by the government do not support the proposition that the FCA requires the continued *ex parte* sealing of the government's extension memoranda.

### B. Disclosure of Government's Extension Memoranda Would Not Reveal Privileged Investigatory Techniques or Chill Future Disclosures

The government next argues that the extension memoranda should not be disclosed to relators because these memoranda "reveal investigatory techniques, decision-making processes, and reasoning that apply in hundreds of similar cases in which the government must decide whether and how to conduct enforcement litigation." Gov't's Opp'n at 8. While the government is appropriately protective of such investigative information, this description overstates the revelations in the extension memoranda. The extension memoranda vary in length from three to five pages and contain largely background facts already disclosed in the complaint, the government's boilerplate legal arguments in support of its extension motions, and general descriptions of the investigatory steps taken, including collection and review of relevant documents from the Tennessee litigation resulting in the 2013 Judgment and from relevant U.S. Military and defense contractor sources responsible for implementation and overseeing performance of and payments under the contract at issue, as well as from the defendants. The extension memoranda supply virtually no information regarding the government's on-going efforts to decide whether to intervene in terms of an assessment of the relators' claims, the total numbers or names of any witnesses interviewed or even the locations, volume or custodians of

the documents reviewed, and only minimal information regarding the positions of some of the witnesses whom the government determined had relevant information. Rather, the government's investigatory efforts are described generally and reflect obvious steps in any investigation, such as collecting relevant documents and conducting witness interviews. *See United States ex rel. Littlewood v. King Pharm., Inc.*, 806 F. Supp. 833, 843 (D. Md. 2011) ("[U]nsealing is appropriate if the documents merely disclose 'routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business … [and] contain[] no information about specific [investigatory] techniques." (quoting *United States ex rel. Mikes*, 846 F. Supp. at 23)); *Horizon West, Inc.*, 2006 WL 305966, at *3 (holding that "the Government's bare assertion that the disclosure of its extension requests would 'reveal pieces of the government's investigatory techniques, decision-making processes, research, and reasoning that apply in hundreds of similar cases' is not sufficient" to keep requests under seal). The government revealed no information in the extension memoranda that could be considered evaluative of internal reasoning contributing to next investigatory steps or to its declination decision. In short, nothing in the extension memoranda reveals the government's decision-making in this case.[3]

Relatedly, the government further argues that disclosing the extension memoranda to the relators' counsel "would have a chilling effect on the future preparation of such briefs," because it "would likely lead the government to be more circumspect in future cases in revealing to the courts the course of its investigations and the government's research and decision-making." Gov't's Opp'n at 8. This "chilling effect" argument fails to persuade for much the same reasons addressed above. While the government must show "good cause" for extensions of time under

---

[3] At any rate, before release of any extension memoranda to the public, the government may be granted an opportunity to suggest any contents that the government believes should be redacted.

the FCA, *see* 31 U.S.C. § 3730(b)(3), the government may show good cause, as it has in the instant case, without revealing important investigatory techniques, detailing the specific steps taken, analyzing the strengths or weaknesses of particular claims based on the information gleaned from witness interviews or document review, or explaining the reasons for the government's internal decision to intervene or not. A wide-ranging middle ground lays between, on the one hand, an insufficient showing for an extension of time, and on the other hand, a showing so comprehensive and detailed that it prejudices future government investigations if unsealed. Thus, the government's future filings will not be "chilled" because the government will continue to have ample berth to make necessary showings of good cause, even while knowing that these showings may eventually be made available to the relators, which is the only issue before this Court.

### C. Application of the *Hubbard* Factors

As discussed above, the FCA is silent as to whether government memoranda filed in support of motions for extension of time must remain under seal and, therefore does not bar the limited unsealing sought here. Moreover, the memoranda are properly designated "judicial records," as they were filed in support of motions seeking a judicial action, and played a critical role in the Court's decision to grant the extensions requested by the government. For the reasons set forth below, the six *Hubbard* factors, on balance, weigh in favor of disclosing the extension memoranda to relators.

#### 1. *The Need for Limited Unsealing to Relators*

The relators offer two reasons for why the government's memoranda should be disclosed to them. First, the relators wish "to ensure that the representations that were being made to Relators (which provided the bases for Relators' consent to all seven motions) were the same or at least not inconsistent with the representations that the government was making to the Court in

10

its memoranda." Rels.' Mem. at 11. Second, the relators wish to discover information collected by the government and "disclosed to the Court in the government's memoranda of law, that would counsel against proceeding with the case." *Id.* Only the second reason advances the public interest in the limited unsealing sought here.

The relators' first reason for access to the memoranda appears, at bottom, to test the veracity of the government's representations to relators. *Cf. Azar v. Garza*, 138 S. Ct. 1790, 1793 (2018) ("[I]t is critical that lawyers and courts alike be able to rely on one another's representations."). The relators claim that their "consent [to the seven motions] was tied to the government's assurances that the government was going to intervene in this case," Rels.' Mem. at 10, that "[t]he government has repeatedly and consistently communicated to Relators that DOJ would be intervening in this case," Rels.' Mem. at 12, and that the assurances were "unequivocal," Rels.' Mem. at 12 n.3. The government denies that any assurances of government intervention were made to the relators. *See* Gov't's Opp'n at 9 n.3. While ensuring the integrity of the judicial process is part of the court's inherent powers, *see generally Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the relators' apparent surprise at the government's declination decision does not warrant unsealing of the extension memoranda. The disconnect between the relators' expectation and the government's declination decision likely arises in many *qui tam* actions due to a variety of reasons, such as overly optimistic interpretations of, or misunderstanding, the government's representations, changing assessment over time by the government of the relators' claims, and government resource issues that affect the exercise of prosecutorial discretion whether to intervene in a particular case. Consequently, unsealing the extension memoranda may do little to settle the precise reason for the disconnect

and, standing alone, this reason does not suffice to warrant limited unsealing of the extension memoranda to the relators.

The relators further claim, however, that disclosing the extension memoranda will aid the relators in determining whether to proceed with their *qui tam* action, absent the government's intervention. Rels.' Mem. at 11. The relators would be litigating on the United States' behalf and, should they succeed, their success would ultimately accrue to the public interest. *See United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 140 (D.D.C. 2012) ("[T]he need for public access to judicial records may be regarded as particularly vital where—as here— members of 'the taxpaying public are, in effect, real parties in interest.'" (quoting *United States v. Thomas*, 840 F. Supp. 2d 1, 3 (D.D.C. 2011)). At the same time, if information contained in the extension memoranda alert the relators to reasons for pause in their pursuit of the *qui tam* claims, the earlier resolution of these claims will preserve the time, attention, and attendant resources of the parties and the Court. Moreover, to the extent that the extension memoranda disclose sources of relevant information uncovered by the government, the relators will be able to expedite discovery in the case, which has already been delayed for several years pending the government's decision whether to intervene. Expediting discovery would inure to the benefit of the relators, the government, and the Court. Therefore, the relators' second argument counsels in favor of disclosure under the first *Hubbard* factor.

### 2. *Extent of Previous Public Access*

Where the public already has access to the information in question, *Hubbard* instructs courts to weigh the pre-existing access in favor of disclosure. *See Hubbard*, 650 F.2d at 318 ("Previous access is a factor which may weigh in favor of subsequent access."). *See also United States ex rel. Grover v. Related Companies, LP*, 4 F. Supp. 3d 21, 26 (D.D.C. 2013); *United*

*States ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 173 (D.D.C. 2008). "[T]he rationale behind treating prior access as favoring unsealing" is "that it is less harmful to release a document that was once public than to release one that has never been made publicly accessible." *Friedman v. Sebelius*, 672 F. Supp. 54, 59 (D.D.C. 2009) (citing *Nat'l Children's Ctr., Inc.*, 98 F.3d at 1409-10 and *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 92-93 (D.D.C. 2008)).

Well before the relators filed their complaint in October 2015, a lengthy record of the events underlying the instant FCA claims had already been established in a civil suit between the relators and the defendant Sterling Operations, where a jury verdict found Sterling Operations liable for breach of contract and trespass. *See* 2013 Judgment. Likewise, as already noted, the contents of the extension memoranda at issue largely contain information from the complaint, which has been made public. *See* Order, dated November 19, 2018, ECF No. 25. Finally, perusal of the extension memoranda indicates that the only information not already publicly available relates to the government's own investigatory actions to determine whether to intervene. As noted *supra* in Part III.B, those investigatory steps are largely described in general terms and involve steps that are common to virtually every investigation, such as collecting and reviewing documentation and interviewing witnesses, but the memoranda do identify the sources providing relevant information to the government, which sources may not be entirely publicly known. While this factor would weigh against full public disclosure, this same factor would expedite discovery in this case brought by relators to recover funds allegedly defrauded from the U.S. Government and, therefore, weighs slightly in favor of disclosure to the relators with a limited unsealing.

13

### 3. *Objections to Unsealing*

The third *Hubbard* factor considers the "fact of" an objection and the "identity of" the person objecting. *Hubbard*, 650 F.2d at 319-320. In the instant case, only the government objects to the limited unsealing, though third parties have had no opportunity to object since the relators' motion to unseal is itself filed under seal. The government's objection to unsealing, however, is predicated on concerns about the chilling effect any unsealing will have on future investigations and government filings for extensions of time for making intervention decisions. These concerns are no more persuasive here to keep sealed these judicial records. Therefore, this factor favors unsealing.

### 4. *Strength of Asserted Property/Privacy Interests*

Besides the claim of an investigatory privilege by the government, neither party claims a property or privacy interest to be at stake. Therefore, this factor has limited relevance for or against the relators' request for limited unsealing.

### 5. *Possibility of Prejudice*

The possibility of prejudice "refers to 'whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal.'" *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68 (D.D.C. 2011) (quoting *Friedman*, 672 F. Supp. 2d at 60). As discussed above, the government's arguments as to the potential prejudice resulting from the limited unsealing of the extension memoranda fail to persuade. The government's concern about revealing investigatory techniques could, in principle, be afforded significant weight, but review of the extension memoranda shows that the government's concern here is misplaced. Moreover, any prejudice that could be ascribed to a public unsealing are minimized at this stage, because the relators seek only a limited unsealing.

### 6. *Purpose of Sealed Materials' Introduction*

The final *Hubbard* factor focuses on the purpose for which the sealed materials were introduced, where materials more central to the litigation and actually relied upon by the judge carry a stronger presumption of availability to the public. *See Hubbard*, 650 F.2d at 321 (holding that the district court should not have unsealed the documents where the documents "were not determined by the trial judge to be relevant to the crimes charged … were not used in the subsequent 'trial'; nor were they … described or even expressly relied upon by the trial judge in his decision on the suppression motion"). Here, the Court relied on the government's memoranda to decide whether the government had established "good cause" under the FCA to warrant each of its seven requested extensions of time over three years. Therefore, this factor weighs in favor of unsealing.

In sum, having applied the six-factor *Hubbard* analysis, the Court finds that the public interest and purpose factors weigh strongly in favor of disclosure, and that other factors also generally favor the limited unsealing sought here. Thus, in accordance with the "strong presumption in favor of public access to judicial proceedings," *Johnson*, 951 F.2d at 1277, the Court will grant the relators' motion for limited unsealing.

### IV. CONCLUSION

Upon Consideration of the United States' Notice of Election to Decline Intervention, ECF No. 23, in this action pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B), it is hereby

**ORDERED** that the relators' Motion for an Order that the Department of Justice Serve on Relators' Counsel, Under Seal, the Memoranda of Law That Accompanied the Government's

Seven Requests for Extensions to Consider Its Election to Intervene and Preserve Records, ECF No. 24, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that the government's seven motions for extension of time to consider election to intervene and associated memoranda of law, docketed at ECF Nos. 2, 4, 8, 10, 13, 15, and 18, be partially unsealed for purposes of allowing access to relators and their counsel and that the government, by **January 7, 2019**, deliver these memoranda to relators' counsel; and it is further

**ORDERED** that the relators' Motion for an Order that the Department of Justice Preserve Records is **DENIED**.

So ordered.

Date: December 31, 2018

_____
BERYL A. HOWELL
Chief Judge